**CARPENTERS LOCAL UNION NO. 345 HEALTH AND WELFARE FUND, et al., Plaintiffs-Appellants,**

**v.**

**W.D. GEORGE CONSTRUCTION CO., et al., Defendants-Appellees.**

**No. 85–5205.**

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1986.

Decided June 5, 1986.

---

Edward J. McKenney, Jr., argued, Hanover, Walsh, Jalenak & Blair, Memphis, Tenn., for plaintiffs-appellants.

* Honorable Scott Reed, United States District Court, Eastern District of Kentucky, sitting by

W. Lee Whitman, argued, Memphis, Tenn., for defendants-appellees.

Before: MARTIN and GUY, Circuit Judges; and REED, District Judge.*

GUY, Circuit Judge.

Plaintiffs appeal from a judgment in favor of defendants in this action brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. For the reasons stated below, we reverse.

## I.

Plaintiffs are joint labor management trust funds established pursuant to 29 U.S.C. § 186. Defendant William D. George (George) is an employer engaged in the construction business formerly doing business as W.D. George Construction Company and presently incorporated and doing business as W.D. George Company, Inc. Plaintiffs filed suit to collect alleged unpaid employer contributions which they claimed defendants were required to pay to plaintiffs to provide benefits to employees represented by Carpenters Local Union No. 345, pursuant to the provisions of applicable collective bargaining agreements and trust agreements. Additionally, plaintiffs sought to collect interest, liquidated damages, and attorneys' fees, pursuant to the provisions of 29 U.S.C. § 1132(g).

The pertinent facts of the dispute are as follows. On November 1, 1974, defendant George signed a "short form" or "compliance agreement" with Local No. 345. That agreement reads in pertinent part:

1. The Employer agrees to adopt, abide by and be bound by all of the provisions of the collective bargaining agreement heretofore entered into between Local Union No. 345, United Brotherhood of Carpenters and Joiners of America, and the West Tennessee Construction Industry Collective Bar-

designation.

gaining Group, Inc., and any modifications, extensions or renewals thereof, with the same force and effect as though the aforesaid collective bargaining agreement was set forth here in full.

2. The Employer agrees to become a party to and be bound by all the terms and provisions of:

(a) The Agreement and Declaration of Trust effective March 1, 1966 of the Carpenters, Memphis, Tennessee Apprenticeship Fund;

(b) The Agreement and Declaration of Trust effective June 1, 1970 of the Carpenters Health and Welfare Trust Fund;

(c) The Agreement and Declaration of Trust pertaining to the establishment of the Pension Fund which will become effective September 1, 1972 when the same is adopted by the Trustees and the Employer bargaining agent;

with the same force and effect as though the Agreement and Declaration of Trust referred to above were set forth here at length and the Employer originally signed the said Agreement and Declaration of Trust; and the Employer agrees to make payments covering all of its employees represented by Local Union No. 345 to the said Plans as required by the collective bargaining agreement and said modifications or amendments hereto, and the Agreement and Declaration of Trusts of the aforesaid Plans. The Employer Trustees named in the aforesaid Agreements and Declaration of Trusts and their successors to act for and on his behalf.

(App., Vol. II, 133.) Pertinent also is the definition of "collective bargaining agreement" given in each of the three trust agreements. That definition is as follows:

### SECTION 4—COLLECTIVE BARGAINING AGREEMENT

The term "Collective Bargaining Agreement" as used herein shall mean any Collective Bargaining Agreement existing between the Employer and the Union which provides for contributions into this Trust Fund as well as any extension or extensions, renewal or renewals of any such Collective Bargaining Agreement or any new Collective Bargaining Agreement which provides for contributions into this Trust Fund.

(App., Vol. II, 176, 216, 257.) The parties refer to a collective bargaining agreement as a master labor agreement (MLA).

On April 30, 1975, the MLA in effect at the time George signed the short form agreement expired. Sixty days prior to that date, Local No. 345 had, pursuant to 29 U.S.C. § 158(d)[1] and the MLA, sent notice to the West Tennessee Bargaining Group, and to all employers who had signed short form agreements, of the union's desire to modify the contract. The part of the MLA referenced in that notice reads as follows:

This Agreement shall remain in full force and effect from June 17, 1974 to April 30, 1975, and shall continue in full force and effect from year to year thereafter unless written notice of a desire to negotiate a change is given by one party to the other not less than sixty (60) days prior to the expiration date of this Agreement or the expiration date of any annual renewal period.

---

**1.** 29 U.S.C. § 158(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising there under, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification; . . . .

(App., Vol. II, 295.) The dates in this clause were changed in subsequent contracts but the rest of the clause remained the same.

Negotiations between the union and the bargaining group then ensued. A new contract was signed at the end of negotiations which modified the prior MLA primarily by providing for increased wages and benefits. The agreement was signed by the union and the bargaining group, and copies were made available to all signatory employers. In the spring of 1976, this sequence was repeated, as it was again in the spring of 1978. At that time, an agreement was signed which was to be effective from May 1, 1978 to April 30, 1981. From November 1, 1974 to April 30, 1981, defendants substantially complied with the provisions of the MLA and the trust agreements. On occasion, defendants became delinquent in their contributions to the funds, and plaintiffs had to file one lawsuit to collect unpaid contributions. However, defendants always ultimately paid and never attempted to terminate the short form agreement or to claim that they were not bound by the provisions of that agreement, the trust agreements, or any MLA.

On February 16, 1981, as in the past, Local No. 345 sent a notice to the bargaining group and to all signatory employers that it sought to modify the 1978 MLA. That letter reads in pertinent part:

This letter is to notify you in accordance with the provision of the National Labor Relations Act and our existing Collective Bargaining Agreement, that Carpenters Local Union No. 345 wishes to modify this Agreement effective May 1, 1981, the date established in our Collective Bargaining Agreement.

We are willing to meet with you for the purpose of negotiating a new contract at your earliest convenience.

(App., Vol. II, 330.) George denies having received that notice. At trial, he did acknowledge that, at the time, he was aware that the MLA was expiring and that negotiations were underway. Defendants gave no notice to the union or to plaintiffs of a desire to negotiate separately or that they did not intend to be bound by any MLA negotiated. They also gave no notice to the union or plaintiffs that they intended to terminate the short form agreement.

In May of 1981, the union went on strike, but the carpenters working for defendant corporation did not participate in the strike. George testified that his only knowledge of the strike came from reading the newspaper. At the end of the strike, negotiations between the union and the bargaining groups resulted in a new MLA, with the primary changes being increases in wages and benefits, as in the past. On June 3, 1981, as in prior years, the union sent a notice to all signatory employers, including defendants, setting forth the agreed upon new MLA. The hourly wage rate was raised to $11.83.

On June 4, 1981, defendant corporation increased the hourly rate of pay of its carpenters to $11.83, but defendants stopped making contribution reports or payments to the trust funds. Defendants continued to employ carpenters until May 1, 1982.

During the course of this litigation below, defendants laid off all carpenters and began to subcontract their carpentry work. On February 18, 1983, George sent notice to the union of his intent not to be bound by any agreement after April 30, 1983. That date was the expiration of the 1981 MLA. On May 1, 1983, defendants began employing carpenters again.

On October 5, 1981, plaintiffs filed this action, alleging that defendants had refused to pay contributions since April 1, 1981, thereby breaching the short form agreement of 1974 and the MLAs and the trust agreements incorporated therein between the union and West Tennessee Bargaining Group. On March 28, 1984, the bench trial in this case began. On April 5, 1984, the district judge made oral findings, but indicated that he would wait to file a written opinion until a transcript had been made. On February 6, 1985, the district judge substituted a written ruling for his oral findings. In this written ruling he

first dismissed George in his individual capacity, a holding plaintiffs are not appealing. Second, he found defendant corporation was successor to defendant construction company, and that defendant company and corporation had, by their actions, ratified the 1974, 1976, and 1978 MLAs. Third, he rejected defendants' argument that the employees performing carpentry work for defendant corporation were exempt superintendents. Fourth, although George testified that he did not receive the union's notice in 1981, the court found that when the union sent the notice to the bargaining group of its intent to modify the 1978 agreement and wage increases were negotiated, the 1978 MLA was changed and therefore terminated as of April 30, 1981. Fifth, he found that on May 1, 1981, defendant corporation ceased making contributions and expressed the desire not to be bound by the MLA except when it subcontracted work to signatory employers. Finally, the court determined that defendants' obligation to pay contributions terminated on expiration of the 1978 MLA.

Plaintiffs filed a timely appeal from that order. They seek $24,356.56 in unpaid contributions, $20,810.84 in interest and liquidated damages, pursuant to 29 U.S.C. § 1132(g), and $9,161.43 in attorneys' fees, for a total of $54,338.83.

## II.

We review the interpretation of contractual provisions *de novo*. *Weimer v. Kurz-Kasch, Inc.*, 773 F.2d 669, 671 (6th Cir. 1985). On appeal, plaintiffs present two alternative bases for reversal. Plaintiffs' major contention is that defendants are bound by the 1981 MLA. Their second, alternative argument is that, assuming that defendants are not bound by the 1981 MLA, the 1978 MLA continued in effect between the union and defendants subsequent to April 30, 1981. Because we find that defendants were bound by the 1981 MLA, we need not address plaintiffs' second argument.

■ The district court found for defendants as follows:

The plaintiff sues on the theory that the prior agreement between those parties, which is an exhibit to the complaint, is binding upon the defendant corporation because the Union merely modified the agreement which is attached to the complaint and, therefore, did not change it. That agreement does provide that if notice is given of a change, then the agreement terminates or expires on April 30, 1981. This Court finds that the notice which was given did call for a *change* and a *change* was made. Counsel for the plaintiff argues that there is authority that a wage scale and benefit scale is merely a modification. This Court disagrees and holds that on the basis of these contracts, the defendant W.D. George Company, Inc. must prevail.

(App., Vol. 1, 64.) The district court draws a distinction between the language in the short form agreement of "any modifications, extensions, or renewals," the language of the MLA of "notice of a desire to negotiate a change," and the language of the notice sent by the union of "wishes to modify," and "the purpose of negotiating a new contract." We agree with the district court that the union's notice terminated the 1978 agreement, but we also agree with plaintiffs that the short form agreement was not terminated at that time and binds defendants to the 1981 MLA whether that MLA is denominated a modification of the prior agreement or a new agreement.

■ The "short form" or "compliance agreement" at issue in this case is typical of agreements utilized by labor unions and smaller contractors working in the construction industry. Through the use of such agreements, a smaller, usually independent, contractor agrees to be bound by a collective bargaining agreement negotiated by a union and multi-employer bargaining group representing contractors within a particular jurisdiction and pays contributions according to the terms of such agreements. *See Charles D. Bonanno Linen Service, Inc. v. NLRB*, 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982). Both plaintiffs and defendants agree that the

test for determining whether an employer is bound by the results of multi-employer bargaining is whether the employer has indicated from the outset "an unequivocal intention to be bound by group action and collective bargaining." *See McAx Sign Co., Inc. v. NLRB*, 576 F.2d 62, 65 (5th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979). In the construction industry, the unequivocal intention of an employer to be so bound is typically found in the employer's execution of the short form agreement.

In the present case, pursuant to the express provisions of the short form agreement and trust agreements incorporated therein, defendants agreed to pay contributions to plaintiff trust funds as required by the MLA in existence in 1974, any extensions, amendments, or renewals thereof, or pursuant to the terms of any new MLA requiring the payment of contributions to plaintiff trust funds. It is uncontested that the 1981 MLA was negotiated by Local 345 and West Tennessee Bargaining Group and that it required the payment of contributions to plaintiff trust funds. We do not find that the language of the short form agreement, the MLAs, and the trust agreements leads to the conclusion that "change" and "modification" mean different things. The short form agreement does not merely bind a signatory employer to renewals of the same MLA, but also binds it to modifications thereof. In a collective bargaining relationship, it is contemplated that contracts will be modified to provide for increased wages and benefits. The MLA in question here provides for such modification. A new contract can certainly be a modification of a prior one.

Termination of the prior MLA does not terminate the short form agreement between the parties.

Defendants never formally indicated that they wanted out of this continuing bargaining relationship until February of 1983. The courts have held that an employer must withdraw from the bargaining relationship before negotiations commence on a new contract. In *McAx Sign Co., Inc.*, 576 F.2d at 67–68, the court found: "The board [NLRB] has repeatedly held that withdrawal from a multi-employer bargaining unit is untimely if attempted after the commencement of negotiations. *See, e.g., NLRB v. Tulsa Sheet Metal Works, Inc.*, 367 F.2d 55, 57 (10th Cir.1966); *NLRB v. Sheridan Creations, Inc.*, 357 F.2d 245 (2nd Cir. 1966), *cert. denied*, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544; *NLRB v. Sklar*, 316 F.2d 145 (6th Cir.1963)." *See also Bonanno.*[2] The union's February, 1981 notice of desire to negotiate a new contract did not terminate the preexisting bargaining relationship between defendants and the union. Defendants were aware that the 1978 MLA was expiring and had given no notice to the union that they intended to terminate the short form agreement. Thus, they had an obligation to continue bargaining with the union. They were further aware that there were on-going negotiations between the union and the West Tennessee Bargaining Group. They did not give any notice that that group no longer had any authority to bargain on their behalf. The first such notice given was on February 18, 1983, when defendants sent notice to the union of their intent not to be bound by any agreement after April 30, 1983. This is exactly the sort of notice which defendants could

---

**2.** In *Bonanno*, 454 U.S. at 410–411, 102 S.Ct. at 724, the Court pointed out that:

> Until 1958, the Board [NLRB] permitted both employers and the union to abandon the [multi-employer bargaining] unit even in the midst of bargaining.... But in *Retail Associates, Inc.*, 120 N.L.R.B. 388 (1958), the Board announced guidelines for withdrawal from multiemployer units. These rules, which reflect an increasing emphasis on the stability of multiemployer units, permit any party to withdraw prior to the date set for negotiation of a new contract or the date on which negotiations actually begin, provided that adequate

> notice is given. Once negotiations for a new contract have commenced, however, withdrawal is permitted only if there is "mutual consent" or "unusual circumstances" exist.

In *Bonanno*, the Court upheld the Board's holding that an impasse in bargaining does not constitute an unusual circumstance justifying unilateral withdrawal from a multi-employer unit. In the present case, defendant corporation was not a member of the bargaining group, but the principles set forth in *Bonanno* and *Retail Associates* apply equally well in the case of an employer who has authorized the group to bargain for him.

have given at least sixty days prior to April 30, 1981, to indicate their withdrawal from a collective bargaining relationship with the union and in order to terminate the short form agreement. However, in 1981 they did not do so.

Since we find that defendant W.D. George Company, Inc., is bound by the 1981 MLA negotiated by Local 345 and the West Tennessee Bargaining Group, we find that defendant W.D. George Company, Inc., owes contributions to plaintiffs in accordance with that MLA and the trust fund agreements through April 30, 1983. As of that date, defendants had properly given notice of their intent to no longer be bound by the short form agreement.

Finally, plaintiffs also contend that defendants owe contributions for April 1981, under the 1978 agreement, prior to the 1981 MLA taking effect. The court below does not seem to have addressed this issue in its order although it was properly raised below by plaintiffs, and the issue should be addressed on remand.

Accordingly, the judgment of the trial court is REVERSED and this action is REMANDED to the district court for a determination of damages pursuant to this opinion.