47 F.3d 1167
 Pens. Plan Guide P 23905P
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CARPENTERS' PENSION TRUST FUND-DETROIT AND VICINITY, et al.,
Plaintiffs - Appellees
v.
C.M.K. CONSTRUCTION, INC., et al., Defendants - Appellants.
 No. 93-2274.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1995.
 
 Before: KEITH, JONES and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Defendants-Appellants appeal from the September 7, 1993 final judgment of the United States District Court for the Eastern District of Michigan. For the reasons following, we AFFIRM.
 
 I. STATEMENT OF THE CASE
 A. Procedural History
 
 2
 This appeal arises from a claim lodged by the Plaintiffs-Appellees, Carpenters' Pension Trust Fund - Detroit and vicinity; Detroit Carpenters' Health and Welfare Fund; and Carpenters' Vacation and Holiday Trust Fund - Detroit and vicinity (the "Funds"), against several Carpentry Contractors for failure to contribute to the Funds. The Funds claimed the Carpentry Contractors owed delinquent fringe benefit contributions, including contractual late payment charges or liquidated damages, on behalf of certain of their employees for work performed by the employees from August 1990 through February 1, 1992. The fringe benefit contributions were due pursuant to the terms of a collective bargaining agreement (the "International Agreement") entered into between the Defendant-Appellants and the United Brotherhood of Carpenters and Joiners of America (the "UBCJA"), a labor organization. Defendants-Appellants were represented during the negotiation of the International Agreement by their collective bargaining representative, the Michigan Carpentry Contractors' Association (the "MCCA").
 
 
 3
 The Funds brought their claim under Section 301 of the Labor Management Relations Act ("LMRA")[1], 29 USC Sec. 185 and Sections 502(a)(3)[2] and 515[3] of the Employee Retirement Income Security Act ("ERISA"), 29 USC Secs. 1132(a)(3) and 1145. On May 19 and 20, 1992, a non-jury trial was held before the Honorable Horace Gilmore. On May 21, 1992, the court issued its opinion from the bench, finding the International Agreement obligated the defendants to pay fringe benefit contributions for residential work performed during the period of August 1990 through February 1, 1992; the expiration of the Appellants' Local Agreement did not affect Appellants' liability to pay into the fund; and the Appellants were bound through the International Agreement to local wage agreements.
 
 
 4
 The parties, with the court's approval, agreed to bifurcate the issues of liability and damages. The issue of damages was referred to Magistrate Judge Virginia M. Morgan. The magistrate issued an amended report and recommendation on July 1, 1993. On September 7, 1993, the district court issued its Final Judgment in favor of the Funds, adopting the report and recommendation of the magistrate. This timely appeal follows.
 
 B. Facts
 
 5
 The Defendant-Appellants are employers in the building and construction industry and are all members of the MCCA. Over the past twenty years the MCCA negotiated local collective bargaining agreements with the Carpenters District Council of Detroit (the "CDC") covering residential carpentry/construction work. The last of these agreements expired August 1, 1989.
 
 
 6
 On May 16, 1989, the President of the UBCJA created Local Union 1234 and gave it the power to negotiate agreements covering residential carpentry work within eleven of the twelve counties covered by the CDC in southeastern Michigan, excluding Genesee County. Local Union 1234 was not affiliated with the CDC, consequently the CDC lost its authority to negotiate agreements covering residential carpentry work except in Genesee County. The MCCA negotiated an agreement governing residential construction work with Local Union 1234 and the UBCJA (the "Residential Agreement") which was in effect from August 1, 1989 to August 1, 1990. Pursuant to this agreement the Appellants made contributions to the Funds.
 
 
 7
 On July 10, 1989, the MCCA and the UBCJA entered into a three year agreement referred to as the International Agreement. Under paragraph two of the International Agreement, the MCCA agreed to
 
 
 8
 comply with contractual wages, fringe benefits, hours and other working conditions established between the UBCJA affiliates and the employers or recognized employer agencies in the localities in which the Company does any work within the jurisdiction of the UBCJA.
 
 
 9
 Paragraph three of the International Agreement provided:
 
 
 10
 Payment of pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement for that locality....
 
 
 11
 (J.A. 27)
 
 
 12
 The Appellants contend the Local Union 1234 contract covered residential work in the eleven counties listed in the Residential Agreement. Once the Residential Agreement expired on August 1, 1990, the Appellants argue they had no further obligation to contribute to the Funds. The Funds, on the other hand, argue that pursuant to paragraph 2 of the International Agreement, the Appellants were obligated to make contributions for any work performed in its jurisdictional area, including residential work.
 
 
 13
 In November 1989, the general president of the UBCJA returned jurisdiction over the residential carpentry field to the CDC in its entire twelve-county area. Local 1234 affiliated with the CDC, and the CDC became responsible for the enforcement of residential agreements, including the Residential Agreement and future negotiations of new agreements.
 
 
 14
 Prior to the expiration of the Residential Agreement, the CDC and the MCCA attempted to negotiate a new agreement. The negotiations failed to result in a new agreement and, following a contract extension, on August 15, 1989, the union went on strike in support of its contract demands. Between August 1990 and February 20, 1992, essentially all MCCA employers failed to make contributions to the Funds for residential work.
 
 
 15
 Effective February 1, 1992, the MCCA and Local 1234 entered into a new collective bargaining agreement. Following this agreement, the members of the MCCA, including all defendants, resumed contributions to the Funds.
 
 II. DISCUSSION
 
 16
 We review the interpretation of contractual provisions de novo. Central States Pension Fund v. Behnke, Inc., 833 F.2d 454, 458 (6th Cir. 1989); Carpenters Local Union No. 345 Health and Welfare Fund v. W.D. George Construction Co., 792 F.2d 64, 68 (6th Cir. 1986).
 
 A. Jurisdiction
 
 17
 Appellants argue that the NLRB has exclusive jurisdiction of the claims raised in this case because they deal with representational issues. We agree, however, with the district court's findings that this matter is properly in the federal courts. There is no merit to Appellants' claim that the NLRB has exclusive jurisdiction.
 
 B. The International Agreement
 
 18
 The International Agreement in question clearly states in paragraph two that the MCCA will comply with fringe benefits and hourly wages requirements "in the localities in which the [MCCA] does any work ...." (Emphasis added). There is no limitation in the agreement as to the locality of the work or the type of work performed, i.e. residential or commercial. The Appellants argue they did not intend to have the International Agreement affect their local bargaining conditions.
 
 
 19
 Correspondence between the parties, however, belies this argument. In response to a letter dated June 12, 1989, written by Don Doughty, who negotiated on behalf of the MCCA, Dean Sooter, Vice President for the International Carpenters Union, wrote the following dated June 20, 1989:
 
 
 20
 With respect to the Detroit metropolitan area, I explained that under the International Agreement, on commercial work the employer would apply the Detroit District Council conditions in Genesee County only, and the Local 1234 conditions for all other counties covered by Local 1234.
 
 
 21
 This explanation, however, was not meant to imply that the International Agreement covers only Detroit area commercial and residential work. On the contrary, the International Agreement would be binding on each signatory employer all over the State of Michigan, and throughout the U.S. and Canada, where ever he may perform UBC work.
 
 
 22
 (J.A. at 378)
 
 
 23
 Without further correspondence, the president of the MCCA signed the International Agreement.
 
 
 24
 On its face, the International Agreement states that MCCA employer members are bound to contribute to the Funds for commercial and residential work. This court finds no ambiguity as to what is meant in paragraph two by the phrase "in which the [MCCA] does any work within the jurisdiction of the UBCJA." Any work means just that, any work, including commercial and residential. Even if there were an ambiguity as to what was meant in the International Agreement, the correspondence between Sooter and Doughty manifests a clear intent of the parties to be liable for payments to the Funds for residential and commercial work.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons the decision of the Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan is AFFIRMED.
 
 
 
 [1]
 LMRA Section 301(a) states:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 USC Sec. 185.
 
 
 [2]
 ERISA Section 502(a)(3) provides that a civil action may be brought:
 by a participant, beneficiary, or fiduciary (A) to enjoin any act of practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 USC Sec.1132(a)(3).
 
 
 [3]
 ERISA Section 515 provides that:
 Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. 29 USC Sec.1145.