**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2508
_____

CARPENTERS HEALTH AND WELFARE FUND OF
PHILADELPHIA AND VICINITY; CARPENTERS
PENSION AND ANNUITY FUND OF PHILADELPHIA
AND VICINITY; CARPENTERS SAVINGS FUND OF
PHILADELPHIA AND VICINITY; CARPENTERS JOINT
APPRENTICE COMMITTEE; METROPOLITAN
REGIONAL COUNCIL OF CARPENTERS, UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA; CARPENTERS POLITICAL ACTION
COMMITTEE OF PHILADELPHIA & VICINITY;
EDWARD CORYELL; INTERIOR FINISH
CONTRACTORS ASSOCIATION OF DELAWARE
VALLEY INDUSTRY ADVANCEMENT PROGRAM;
CARPENTERS INTERNATIONAL TRAINING FUND,
FKA National Apprenticeship and Health and Safety Fund,

Appellants

v.

MANAGEMENT RESOURCE SYSTEMS INC;
DOUGLAS W. MARION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-14-cv-07097)
District Judge: Hon. Gerald J. Pappert
_____

Argued: June 22, 2016

Before: McKEE, Chief Judge, FISHER and GREENAWAY, JR.,
Circuit Judges

(Opinion Filed: September 13, 2016)
_____

James E. Goodley, Esq.
Stephen J. Holroyd, Esq. **[ARGUED]**
Jennings Sigmond
1835 Market Street
Suite 2800
Philadelphia, PA 19103

   *Attorneys for Appellants*

Walter S. Zimolong, III, Esq. **[ARGUED]**
Suite 1201
1429 Walnut Street
Philadelphia, PA 19102

   *Attorney for Appellees*
_____

OPINION OF THE COURT
_____

McKEE, <u>Chief Judge</u>

Plaintiffs collectively appeal the district court's dismissal of their claims against Management Resource Systems ("MRS"). The district court rejected Plaintiffs' claim that a collective bargaining agreement ("CBA") obligated MRS to make employee benefit contributions and submit to audits pursuant to a separate "me-too" agreement between MRS and the Plaintiffs. The district court dismissed the Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), agreeing with MRS that the complaint did not sufficiently plead that MRS is bound by the CBA. Because we disagree, we will reverse the district court's dismissal of the complaint.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs are union and management sponsored trust funds and employee benefit plans that represent construction

industry employees.[1]  MRS is a corporation that constructs commercial buildings.[2]  At least insofar as this dispute is concerned, the relationship between Plaintiffs and MRS began in the 1990s.  In 1994 and again in 1997, MRS signed assent letters (or "me-too" agreements) binding it to CBAs bestowing various rights on Plaintiffs.  Pursuant to the 1997 assent letter at issue here, MRS agreed to be bound by a more comprehensive agreement ("1997-2001 CBA"), which was then in force between the Interior Finish Contractors Association ("IFCA"), a multiemployer association, and the union (both Plaintiffs/Appellants).

According to Plaintiffs, by signing the 1997 letter, MRS also agreed to be bound by a later CBA ("2012-2015 CBA").  They claim the 1997 letter contains an "evergreen clause" that empowers the union and IFCA to negotiate successor agreements that bind MRS.  Plaintiffs assert that this delegation of negotiating authority remained in force because MRS never gave Plaintiffs the notice required to terminate the 1997 letter's evergreen clause.  MRS concedes that it never gave notice of termination.  However, it disputes the Plaintiffs' characterization of the letter agreement.  MRS denies that the letter continuously granted bargaining rights.

---

[1] The district court identified the Plaintiffs as:  "Carpenters Health and Welfare Fund of Philadelphia and Annuity Fund of Philadelphia and Vicinity, Carpenters Savings Fund of Philadelphia and Vicinity, Carpenters Joint Apprentice Committee, Carpenters Political Action Committee of Philadelphia and Vicinity, Carpenters International Training Fund, Edward Coryell, Interior Finish Contractors Association of Delaware Valley Industry Advancement Program, and Metropolitan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America." *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., Inc.*, No. CIV. A. 14-07097, 2015 WL 2395152, at *1 n.2 (E.D. Pa. May 19, 2015).
[2] *Id.* at *1 n.1.  Douglas Marion, Vice President of MRS, is also charged in the Plaintiffs' complaint.  Plaintiffs claim that Marion assumed guarantor liability by signing the agreements on behalf of MRS.

Thus, according to MRS, it is not bound by the 2012-2015 CBA.

Under the 2012-2015 CBA and its predecessor 1997-2001 CBA, employers must make specified contributions to various funds of the Plaintiffs and they must permit audits of records relevant to their obligations to employees. For instance, the contested 2012-2015 CBA states that the "Employer shall . . . pay . . . a sum . . . for each hour worked for a Pension and Annuity contribution."[3] With respect to audits, the CBA provides that the

> Employer shall . . . permit such agent during regular business hours to inspect and make copies of any and all records of the Employer pertaining to compensation paid to employees, hours worked by employees, monies withheld from employees for taxes . . . . The Parties hereto recognize and agree that the [union] has an obligation and right to collect monies owed the Fringe Benefit Funds by the Employer and/or owed to the [union] . . . .[4]

Plaintiffs sent MRS several requests for audits because they believed that MRS had failed to make contributions required by the 2012-2015 CBA.[5] They filed this suit when MRS did not comply. Plaintiffs asked for (1) injunctive relief requiring

---

[3] App. at A61.

[4] *Id.* at A74-75.

[5] Plaintiffs allege in their complaint that they are "without sufficient information or knowledge to plead the precise nature, extent and amount of the Defendants' delinquency since the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Defendants." Plaintiffs Complaint at 5 ¶17.

4

MRS to submit to an audit; (2) a post-audit judgment for any amount due with liquidated damages, interest, and costs; (3) post-audit relief under 29 U.S.C. § 1145 for any unpaid ERISA contributions; and (4) a permanent injunction compelling MRS to comply with the 2012-2015 CBA and any subsequent CBAs.[6]

MRS moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on its conclusion that the complaint did not state a claim upon which relief could be granted.[7]  MRS argued that it obviously did not sign the 2012-2015 CBA and claimed that the assent letter could not bridge the critical gap.  MRS also challenged the complaint on the ground that it failed under *Luterbach*, a test the NLRB created to determine when an employer that does not sign a CBA can nevertheless be bound by the results of multiemployer bargaining.[8]  The district court agreed with MRS on both fronts and dismissed the Plaintiffs' complaint.[9] This appeal followed.[10]

## II. JURISDICTION AND STANDARD OF REVIEW

---

[6] *Id.* at 6-10.

[7] According to statements made by Plaintiffs' counsel during oral argument, Plaintiffs did not request an opportunity to amend their complaint.  In any event, as we explain below, even without amendment the complaint was sufficient.

[8] *James Luterbach Constr. Co., Inc.*, 315 N.L.R.B. 976 (1994).

[9] Because of its conclusion that the complaint could not proceed, the district court declined to reach the issue of Marion's personal liability as Vice President of MRS. *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., Inc.*, No. CIV. A. 14-07097, 2015 WL 2395152, at *4 n.7 (E.D. Pa. May 19, 2015).

[10] The district court had jurisdiction under ERISA, 29 U.S.C. §§ 1132, 1145, and Labor Management Relations Act, 29 U.S.C. § 185(a).  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

Our review of the district court's 12(b)(6) dismissal is de novo.[11] Thus, we employ the same standard as the district court. Federal Rule of Civil Procedure 8(a)(2) instructs us that a complaint need not amount to more than a "short and plain statement." In turn, Rule 12(b)(6) provides that a party may move to dismiss for "failure to state a claim upon which relief can be granted."

The Supreme Court's analysis in *Bell Atlantic v. Twombly*[12] and *Ashcroft v. Iqbal* guides our inquiry.[13] Accordingly, we first outline the elements a plaintiff must plead to state a claim for relief.[14] We then "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."[15] Finally, we look for well-pled allegations, assume their veracity, and determine whether they *plausibly* give rise to a right to relief.[16] This plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully," but it is not akin to a "probability requirement."[17] In assessing plausibility, we construe the complaint in the light most favorable to the plaintiff.[18]

## III. DISCUSSION

The resolution of our inquiry turns on the answers to two questions: (1) Did the complaint sufficiently plead that the letter's evergreen clause binds MRS to the 2012-2015 CBA? (2) Does the NLRB's holding in *Luterbach* nullify the 2012-2015 CBA with respect to MRS?

---

[11] *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[14] *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

[15] *Id.*

[16] *Id.*

[17] *Iqbal*, 556 U.S. at 678.

[18] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

## A. The Evergreen Clause

We think it is clear that the assent letter at issue here functions as a me-too agreement. Such agreements are "common and generally enforceable"[19] contracts whereby an employer that is not a member of a multiemployer association agrees to be bound by the terms of CBAs entered into by the association.[20] There is no distinction between actual and "me-too" signatories to a CBA.[21] This allows individual employers to benefit from the terms of an association's CBAs without actually having to get involved in the collective bargaining process.[22]

MRS disputes the "me-too" characterization of the 1997 letter. But it does not offer any explanation as to why that label is a "misnomer," and we can find none.[23] The objection is meritless. There is no doubt that the 1997 me-too letter attached to the complaint bound MRS to CBAs between the IFCA multiemployer association and the union even though MRS was not a party to CBA negotiations. However, the question before us is *which* CBAs are covered by the me-

---

[19] *Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc.*, 344 F. App'x 770, 772 (3d Cir. 2009) (unpublished); *see Constr. Teamsters Health & Welfare Tr. v. Con Form Constr. Corp.*, 657 F.2d 1101, 1103 (9th Cir. 1981) ("It is clear that a signatory to a [me-too] Agreement can agree to be bound by future modifications, extensions and renewals of [a CBA].").

[20] *See Berwind Corp. v. Comm'r of Soc. Sec.*, 307 F.3d 222, 237 n.18 (3d Cir. 2002).

[21] *See Shenango Inc. v. Apfel*, 307 F.3d 174, 188 n.9 (3d Cir. 2002).

[22] *See Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1518 (9th Cir. 1985) (noting that "the basic purpose of a 'me-too agreement' is to allow . . . employers to obtain all the benefits of the master collective bargaining agreement that is negotiated by the principal employers in the industry without having to participate in the industry negotiations").

[23] MRS Br. at vii n.3.

too letter. Put another way, we must decide how long the contractual obligations in that letter bound the signatories. Plaintiffs claim that the "evergreen clause" in the me-too letter extends the 1997-2001 CBA to the 2012-2015 CBA.

Courts generally regard evergreen clauses as creating a perpetual agreement[24] that can only be terminated with notice. "[I]f neither party terminate[s] the contract, it w[ill] be renewed automatically."[25] Here, Plaintiffs point to the following language in the me-too letter that they claim triggers automatic renewal:

> This Agreement shall be effective as of the date set forth below and shall remain in full force and effect for the duration of the collective bargaining agreement between the [union] and [IFCA] that is effective on the date of this Agreement and for the duration of any addition, modification or renewal thereof until one party shall provide to the other written notice . . . to terminate.[26]

According to Plaintiffs, the commitment to be bound to "any addition, modification or renewal" is a prototypical evergreen clause that strictly binds MRS to all successor CBAs until MRS provides "written notice . . . to terminate." Plaintiffs claim that MRS' failure to give the required notice of termination allowed the evergreen clause to continue in effect and that clause operated to bind MRS to the 2012-2015 CBA.

---

[24] *See Holland v. Freeman United Coal Mining Co.*, 574 F. Supp. 2d 116, 123 (D.D.C. 2008) (interpreting an evergreen clause as creating a "perpetual obligation to contribute to the Trust at rates set forth in all 'successor' agreements").

[25] *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 649 (7th Cir. 2001).

[26] App. at A97 ¶2.

MRS responds that, although Plaintiffs now rely on the fact that the me-too letter states that MRS is bound to "addition[s], modification[s], or renewal[s]," there are no allegations *in the complaint* that the 2012-2015 CBA falls into any of these categories. Instead, Plaintiffs simply attached the CBA and assent letter to the complaint without explanation. MRS adds that even though Plaintiffs subsequently attempted to make such allegations in their briefing, it is simply too late for such claims. The district court agreed. It explained: "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."[27]

However, that mistakenly ignores the fact that although the complaint did not specifically allege the existence of the evergreen clause in so many words, when the complaint is read in context with the attachments, the nature of the claim for relief is obvious. A complaint need only contain allegations to give "the defendant *fair notice* of what the . . . claim is and the grounds upon which it rests."[28] Here, the complaint states: "At all times relevant to this action, Defendants were party to, *or otherwise bound by*, [CBAs] with the Union."[29] In stating that MRS was "otherwise bound" to CBAs, Plaintiffs were clearly putting MRS on notice that the suit was based on the attached me-too agreement by the operation of the evergreen clause contained therein.[30]

Ironically, MRS' Rule 12(b)(6) motion to dismiss illustrates the sufficiency of this notice. There, MRS argued that "attached to the CBA are . . . letter agreements . . . *which*

---

[27] *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., Inc.*, No. CIV. A. 14-07097, 2015 WL 2395152, at *4 (E.D. Pa. May 19, 2015) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (emphasis added) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[29] App. at A23 ¶13 (emphasis added).

[30] *Id.* at A97.

*purportedly bind MRS . . . to the CBA.*"[31]  That is to say, MRS' own motion establishes that it understood from the complaint that Plaintiffs were alleging that the me-too letter bound MRS to the 2012-2015 CBA.  MRS could hardly have been prejudiced by any lack of specificity in the complaint.

The complaint also satisfies the demanding requirement of plausibility.  As we mentioned at the outset, me-too letters and evergreen clauses of the kind at issue here are common contractual provisions in the construction industry.  The allegations are therefore all the more credible because they are consistent with prevailing collective bargaining practices.[32]  Put simply, this is far from an improbable set of allegations.

Indeed, courts enforce such me-too agreements in the very manner the Plaintiffs seek in their complaint.  The Court of Appeals for the Sixth Circuit's ruling in *Carpenters Local Union No. 345 Health & Welfare Fund v. W.D. George Construction* illustrates this point.[33]  *W.D. George* involved a dispute in which the employer entered into a me-too agreement, the pertinent terms of which mirror the terms in the agreement before us.  The me-too agreement in *W.D. George* bound the employer to an initial CBA and to "any modifications, extensions or renewals thereof."[34]  Ironically, a Carpenters Health and Welfare Fund in a different locale brought suit to enforce the agreement in *W.D. George*.

In agreeing with the union and concluding the employer was bound to a subsequent CBA that it had not signed, the Sixth Circuit rejected the very arguments that MRS advances here.  The court held that "[t]he [me-too] agreement does not merely bind a signatory employer to

---

[31] MRS Motion to Dismiss at 5 (emphasis added).

[32] *See, e.g.*, *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266 (1983); *NLRB v. Bos. Dist. Council of Carpenters*, 80 F.3d 662, 664 (1st Cir. 1996); *Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1518-19 (9th Cir. 1985).

[33] 792 F.2d 64 (6th Cir. 1986).

[34] *Id.* at 66.

renewals of the same [CBA], but also binds it to modifications thereof."[35]  In other words, me-too agreement evergreen clauses are to be interpreted broadly, to bind employers to successor CBAs even if key terms have changed or the prior CBA has expired.[36]  This reasoning undermines MRS' position that its me-too agreement with Plaintiffs only applies to the initial 1997-2001 CBA.

*W.D. George* also placed the onus of ending the contractual relationship on the employer.  In fact, it was precisely because the employer did not timely indicate its intent to withdraw from the bargaining relationship that the Sixth Circuit held that the me-too agreement extended the employer's contractual obligations to the new CBA.[37]  In rejecting the employer's arguments to the contrary, the Sixth Circuit repeatedly emphasized that the employer "did not give any notice that that [multiemployer association] no longer had any authority to bargain on their behalf."[38]  Neither did MRS here.[39]

MRS incorrectly claims that *W.D. George* is of little value to our inquiry because the Sixth Circuit decided *W.D. George* years before the NLRB released its ruling in *Luterbach*.[40]  As we explain in more detail below, *Luterbach* is distinguishable.  In *Luterbach*, the NLRB created a two-part test for determining when a non-signatory employer is

---

[35] *Id.* at 69.

[36] *Id.*

[37] *Id.* at 69-70.

[38] *Id.* at 69; *see also id.* at 67.

[39] We see no reason to interpret the termination requirement here any differently than the one the court enforced against the employer in *W.D. George*.  In both cases, the agreements endure absent notice of cancellation.  *Id.* at 66 (The *W.D. George* termination provision stated in relevant part:  "This Agreement shall remain in full force and effect from June 17, 1974 to April 30, 1975, and shall continue in full force and effect from year to year thereafter unless written notice of a desire to negotiate a change is given by one party . . . .").

[40] 315 N.L.R.B. 976 (1994).

bound to a CBA.[41]  However, the dispute in *Luterbach* did not involve an evergreen clause granting continuing bargaining authority, and the NLRB's test does not account for such an agreement.  Indeed, the NLRB stressed that the *Luterbach* test only applies to resolve ambiguity about the employer's commitment to be bound.[42]  No such ambiguity exists here.

MRS also argues that the employer/union relationship in *W.D. George* was markedly different than the relationship here.  However, the purported differences are simply insignificant for our purposes.  Whether the employer in *W.D. George* was aware of successor agreements or received notice of negotiations was not dispositive.[43]  Rather, the contractual terms were determinative in *W.D. George*.  As noted earlier, those terms are not only analogous to the pertinent terms here; they are nearly identical.  Accordingly, we find *W.D. George* is very helpful to our analysis.  The district court did not even consider *W.D. George* in its dismissal—apparently, the case was never brought to its attention.

*W.D. George* is not only helpful because its reasoning is persuasive; we also note that the case is no anomaly.  In *Local 257, International Brotherhood of Electrical Workers, AFL-CIO v. Grimm*, for instance, the Court of Appeals for the Eighth Circuit held that a me-too letter's evergreen clause bound the employer to successor CBAs.[44]  It found that the letter provided a "continuous delegation" of the employer's bargaining rights until proper termination, and no such termination notice was given.[45]  That is precisely the situation here.

---

[41] *Id.* at 979-80.

[42] *Id.* at 978.

[43] *See also Cowboy Scaffolding, Inc.*, 326 N.L.R.B. 1050, 1051 (1998) ("Finally, that the Union did not notify the Respondent that successor agreements had been entered into, and did not furnish it with copies of those agreements, indicates only that the Union did not think it necessary to act as the Respondent's agent in these matters.").

[44] 786 F.2d 342, 345-46 (8th Cir. 1986).

[45] *Id.*

Undeterred by contrary precedent, MRS presses on and argues that the text of the 2012-2015 CBA controverts Plaintiffs' claim. In MRS' view, if the CBA included MRS, it would simply say so. MRS insists that by the express terms of the CBA, it only applies to the union and to the IFCA and its members who authorized it to bargain. MRS reminds us that it is not a member of the IFCA and claims it never delegated negotiating power to the association. However, MRS' claim that the 2012-2015 CBA does not cover it because this CBA does not mention it by name is belied by the 1997-2001 CBA. That CBA contains nearly identical terms about the extent to which other parties are bound.[46] It does not mention MRS by name either.[47] Yet, MRS admits that it was bound by that earlier CBA.

Finally, MRS makes a policy argument about the importance of protecting employers' rights to bargain on their own behalf. The argument rings hollow. The Supreme Court has explained that "[n]either party is compelled to enter into a [construction industry] agreement. But when such an agreement is voluntarily executed, both parties must abide by its terms until it is repudiated."[48] Nothing here suggests that MRS was somehow coerced or duped into entering into the me-too agreement clearly binding it to future CBAs. The agreement was voluntarily executed, and MRS does not argue to the contrary. MRS failed to terminate or properly repudiate the agreement according to its express terms. We are therefore confident that enforcement of the me-too agreement in no way vitiates MRS' rights.

## B. *Luterbach*

As we noted earlier, the district court swept aside the contractual language in the me-too agreement in the belief that *Luterbach* required that result.[49] The NLRB created the

---

[46] App. at A107.

[47] *Id.* at A105-37.

[48] *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271 (1983).

[49] 315 N.L.R.B. 976 (1994).

*Luterbach* test in the context of "section 8(f) relationships."[50] That section of the NLRA regulates pre-hire agreements between construction industry employers and unions.[51] *Luterbach* states that a non-signatory employer is bound by multiemployer bargaining with a union only if the employer: (1) was "part of the multiemployer unit prior to the dispute" and (2) "has, by a distinct affirmative action, recommitted to the union that it will be bound."[52] Failure to satisfy either element is dispositive. Here, the district court found that neither requirement was satisfied.[53] That is not surprising since MRS was not a member of the multiemployer unit and it did not perform any "distinct affirmative action" demonstrating its recommitment to a later CBA.[54]

Nevertheless, the district court's reliance on *Luterbach* was misplaced. Though the district court may well be correct that the 2012-2015 CBA does not pass the *Luterbach* test, that does not resolve this dispute because *Luterbach* does not apply here.

First, *Luterbach* is hardly binding on us. As far as we can tell, in the decades since the NLRB decided *Luterbach*, we have only cited *Luterbach* once, and did so then only in passing. In *Sheet Metal Workers' International Association Local 19 v. Herre Bros.*, we referenced *Luterbach* to distinguish 8(f) and 9(a)[55] relationships.[56] But because we

---

[50] CBA relationships involving construction employers are presumed to fall under § 8(f). *See Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 240 (3d Cir. 1999) (describing the 8(f) presumption). Neither party challenges this presumption.

[51] 29 U.S.C. § 158(f); *see Herre Bros.*, 201 F.3d at 239.

[52] *Luterbach*, 315 N.L.R.B. at 980.

[53] *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., Inc.*, No. CIV. A. 14-07097, 2015 WL 2395152, at *3 (E.D. Pa. May 19, 2015).

[54] *Id.*

[55] Under § 9(a) of the NLRA, 29 U.S.C. § 159(a), a union may become the exclusive bargaining representative of a unit of employees if a majority of employees designate the union. An employer with a 9(a) relationship to a union has an

determined that the agreement at issue there did not result in an 8(f) relationship, we did not actually apply *Luterbach*.[57] The jurisprudence of other circuit courts of appeals is not to the contrary. The few circuit courts that mention *Luterbach* place no more reliance on it than we now do.[58]

Even if *Luterbach* were generally authoritative, it still would not decide this dispute because *Luterbach* is inapposite. The *Luterbach* test determines the obligations of an employer "in a multiemployer unit," whereas here, MRS was never a formal member of the IFCA.[59] Furthermore, as Plaintiffs note, *Luterbach* itself expressly disclaims application to agreements supported by ongoing bargaining authority. To make this point, *Luterbach* singles out other NLRB cases where an employer "*obligate[d] itself* to abide by a successor agreement" and explains that such scenarios are beyond its scope.[60] These other cases are analogous to the one at hand.

In *Kephart Plumbing*, an agreement was binding because an employer had previously authorized an association to negotiate with a union on its behalf.[61] Here, the me-too

_____

obligation to negotiate a successor contract with the union in good faith. *See Herre Bros.*, 201 F.3d at 239. No such duty exists in the § 8(f) context. There are no claims that the relationship underlying the CBA here arises under § 9(a).

[56] *Herre Bros.*, 201 F.3d at 239-40.

[57] *Id.* at 242.

[58] *See, e.g.*, *Haas Elec., Inc. v. NLRB*, 299 F.3d 23, 27 n.4 (1st Cir. 2002) (noting but not reaching *Luterbach*); *NLRB v. Triple C Maint., Inc.*, 219 F.3d 1147, 1152 (10th Cir. 2000) (citing *Luterbach* as background but not applying it); *Local Union 48 Sheet Metal Workers v. S.L. Pappas & Co.*, 106 F.3d 970, 975 (11th Cir. 1997) ("We decline to reach the issue of whether *Luterbach* [is] viable in this circuit.").

[59] *James Luterbach Constr. Co., Inc.*, 315 N.L.R.B. 976, 979 (1994) ("The issue posed here is whether an 8(f) employer, *in a multiemployer unit*, is bound, by inaction, to the successor multiemployer contract." (emphasis added)).

[60] *Id.* at 978 (emphasis in original).

[61] 285 N.L.R.B. 612, 612-13 (1987).

letter provided that authority. Similarly, in *Reliable Electric*, an employer that had not withdrawn bargaining authority previously given to an association was bound to the association contract.[62] Likewise, it is undisputed here that MRS did not revoke the negotiating power it had delegated through the me-too letter.

We appreciate that some of the particulars of the cases *Luterbach* distinguishes differ from the facts before us. These are distinctions without a difference. For instance, in *Reliable Electric* the contested CBA went into effect directly upon the expiration of the prior CBA.[63] That supports characterization of the second CBA as a "renewal." Here, in contrast, there was a gap of more than a decade between the first CBA (1997-2001) and the second (2012-2015). However, courts generally do not conclude that such an intervening interval undercuts an evergreen clause's power of renewal.[64] And rightly so; evergreen clauses keep agreements in force despite the passage of time.[65] Ultimately, this dispute neatly fits *Luterbach*'s description of cases that fall outside its purview because they involve an employer "clearly and unmistakably [binding] itself to a successor contract."[66]

---

[62] 286 N.L.R.B. 834, 836 (1987).

[63] *Id.* at 834.

[64] *See, e.g.*, *Cedar Valley Corp. v. NLRB*, 977 F.2d 1211, 1220 (8th Cir. 1992) ("[W]e find no link between periods of inactivity among the parties and the enforceability of the agreements. Rather, the decisive issue is whether Cedar Valley affirmatively, and in compliance with the terms of the 1978 agreements, revoked Associated Contractor's authority to bind it to successive agreements.").

[65] To the extent that the in perpetuity nature of an evergreen clause may be a concern, the signatories can easily add language clearly stating that the continuing authority arising under the agreement will automatically cease after a defined time frame, with no need for formal notice of termination. No such language appears in the agreement between MRS and Plaintiffs. We will not judicially amend the agreement by adopting MRS' argument.

[66] *James Luterbach Constr. Co., Inc.*, 315 N.L.R.B. 976, 979 (1994).

16

This limitation on *Luterbach* makes eminent sense. As the Plaintiffs point out, requiring a "distinct affirmative action" pursuant to *Luterbach*'s second prong in cases like this would void evergreen clauses. They would be transformed into mere surplusage because they are intended to bind parties into the future *without* additional acts. Indeed, *Luterbach* recognizes that applying the second part of its test to cases like this one would be like trying to fit a round peg into a square hole. *Luterbach* explains that "[s]ome affirmative act is necessary to establish [the employer's] consent" to be bound.[67] In the same pronouncement, *Luterbach* recognizes that "there can be cases where the employer has expressly given continuing consent to bargain a successor contract on a multiemployer basis. . . . However, there is no such consent here."[68] In contrast, in the dispute before us the evergreen clause was the consent. That is precisely why *Luterbach* does not apply.

Subsequent NLRB cases confirm *Luterbach*'s boundaries.[69] As the Plaintiffs mention, *Baker Electric*, for

---

[67] *Id.* at 981.

[68] *Id.* at 981 n.11.

[69] *See, e.g.*, *Taylor Ridge Paving & Constr. & Local Union No. 309, Laborers Int'l Union of N. Am.*, 25-CA-135372, 2015 WL 5564621 (N.L.R.B. Div. of Judges Sept. 21, 2015) ("However, unlike in *James Luterbach Construction*, Respondent here agreed to bind itself to successor agreements by the operation of the [me-too letter]. Therefore, I find *James Luterbach Construction* distinguishable from this case."); *HCL, Inc. & Laborers Int'l Union of Am., AFL-CIO, Local 576*, 343 N.L.R.B. 981, 982 (2004) ("*Luterbach*, relied on by the judge, is inapposite . . . . This is not a case in which the respondent was a member of a multiemployer bargaining unit. Nor is this a case of an employer who did nothing to bind itself to a successor 8(f) agreement."); *Cowboy Scaffolding, Inc.*, 326 N.L.R.B. 1050, 1050 (1998) (basing its holding on a finding that a me-too agreement "clearly states that the 1990-1993 contract . . . will automatically renew on a yearly basis thereafter unless either of the parties gives timely

17

instance, rejected application of *Luterbach* in circumstances much like theirs.[70] *Baker Electric* held that an employer was bound to a successor CBA pursuant to a me-too letter with an evergreen clause.[71] In doing so, *Baker Electric* rebuffed the employer's assertion that *Luterbach* freed it from future obligations. On the contrary, the NLRB explained:

> In *Luterbach*, the Board made clear that "there can be cases where the employer has expressly given continuing consent to bargain a successor contract on a multiemployer basis" . . . . Here . . . . Respondent affirmatively bound itself to successor agreements . . . by the express terms of the [me-too letter].[72]

This classification of evergreen clauses as a dividing line between *Luterbach* and non-*Luterbach* cases illustrates why the district court erred in relying on *Luterbach* here.

MRS urges us to reject *Baker Electric* for one reason: Whereas *Baker Electric* involved an *absolute* delegation of bargaining authority, there is no such provision here. MRS claims it simply agreed to join a particular, and now expired, CBA. There is no support for MRS' position. *Baker Electric* described the grant of authority in terms that do not vary in any meaningful way from those in the me-too agreement here. *Baker Electric* portrayed its me-too agreement as "authoriz[ing] the [multiemployer association] as the employer's collective-bargaining representative for all matters pertaining to the current 'Inside' labor agreement with [the union.]"[73] The me-too letter here reads: "The employer shall be and is hereby, bound by all of the terms and

---

notice of an intent to modify or terminate" without reaching *Luterbach*).

[70] 317 N.L.R.B. 335 (1995).

[71] *Id.* at 335, 340-42.

[72] *Id.* at 335 n.2.

[73] *Id.* at 340.

conditions of employment contained in the collective bargaining agreement between the [union] and the [multiemployer association]."[74] For present purposes, the effect of each of these provisions is the same: The employer is bound by agreements between the multiemployer association and the union. *Baker Electric* thus applies squarely here.

Moreover, there is nothing novel about our reliance on *Baker Electric*'s logic. The Court of Appeals for the Fourth Circuit enforced the NLRB's order in *Baker Electric* without even mentioning *Luterbach*.[75] In addition, as we noted earlier, even before *Baker Electric* the Court of Appeals for the Eighth Circuit emphasized that an employer may bind itself to future CBAs through an evergreen clause.[76] The Courts of Appeals for the Fifth,[77] Sixth,[78] and Ninth[79] Circuits have likewise found that an evergreen clause persists in the absence of notice of termination.

MRS' primary support for its claim that *Luterbach* applies—*Iron Workers Tri-State Welfare Plan v. Carter Construction*[80]—does not make *Luterbach* relevant either. First, there is the obvious point that *Iron Workers* is a district court opinion and therefore not binding on us. Second, *Iron Workers* relied on *Luterbach* because the employer provided notice of termination, thereby freeing itself from its

---

[74] App. at A97 ¶1.

[75] *NLRB v. Baker*, 105 F.3d 647, at *4 (4th Cir. 1997) (unpublished) ("Because the Company never effectively repudiated the § 8(f) agreement, it may be held liable for breaching its terms.").

[76] *See Local 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Grimm*, 786 F.2d 342, 345 (8th Cir. 1986).

[77] *See NLRB v. Black*, 709 F.2d 939, 940-41 (5th Cir. 1983).

[78] *See Nelson Elec. v. NLRB*, 638 F.2d 965, 966-67 (6th Cir. 1981).

[79] *See Constr. Teamsters Health & Welfare Tr. v. Con Form Constr. Corp.*, 657 F.2d 1101, 1103-04 (9th Cir. 1981).

[80] 530 F. Supp. 2d 1021 (N.D. Ill. 2008).

commitment to be bound.[81] Without continuing consent, *Luterbach* poses the right question: Whether the employer signaled an intent to be bound through an additional act. But because cancellation of consent did not occur here, *Iron Workers* is irrelevant.

## IV. PLAUSIBILITY

From the preceding it is clear that *Luterbach* does not stand for a rule that all me-too agreements must satisfy its two criteria in order to bind non-signatories to future CBAs. Rather, *Luterbach* is limited to cases that do not involve evergreen clauses or other continuing grants of bargaining authority. Absent the conditions prescribed in *Luterbach,* we need only focus on the plausibility of the complaint under contract law principles. As we explained, the district court was correct that the complaint leaves something to be desired—it does not directly say *why* the 2012-2015 CBA is binding on MRS. However, we are not here to grade the complaint, but to determine if it survives a motion to dismiss under Rule 12(b)(6). We have little trouble concluding that, taken together, the complaint's allegations and attachments put MRS on notice and state a plausible claim for relief. This compels us to "unlock the doors of discovery."[82]

## V. CONCLUSION

For the foregoing reasons, we will reverse the district court's order dismissing Plaintiffs' complaint for failure to state a claim upon which relief can be granted. On remand, the court can determine whether Plaintiffs sufficiently pled the personal liability of MRS' Vice President, Marion. Because of its conclusion that the complaint did not state a claim for relief, the district court did not address whether Marion bore responsibility, as Plaintiffs allege. Accordingly, we will remand for further proceedings consistent with this opinion in the district court.

---

[81] *Id.* at 1030 ("When the 2001 agreement was terminated, this being a section 8(f) relationship, Carter Construction had the option of refusing to bargain for a new contract.").

[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).