NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1999
_____

JAMES S. COLLIER;
MARY ELIZABETH COLLIER, H/W,

Appellants
v.

CSX TRANSPORTATION INC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-06823)
Honorable Eduardo C. Robreno, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 9, 2016

BEFORE:  FISHER, KRAUSE, and GREENBERG, Circuit Judges

(Filed: December 16, 2016)
_____

OPINION[*]
_____


GREENBERG, Circuit Judge


[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. INTRODUCTION

Plaintiff-Appellant James Collier filed suit against CSX Transportation, Inc. in 2015 because he suffers from lung cancer that he alleges arose from his exposure to asbestos while working for CSX, a railroad company, and its predecessors-in-interest in the 1960s and 1970s. In 1994, he had settled an earlier action against CSX that included claims for injuries for exposure to asbestos during his employment. In furtherance of the settlement, Collier executed a document releasing CSX from all future claims based on exposure to a number of different contaminants, including claims for cancer arising out of his exposure to asbestos. Therefore, not surprisingly, when Collier filed suit against CSX in 2015 for a claim related to his asbestos exposure and his new cancer diagnosis, CSX moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the agreement settling Collier's earlier action. The District Court granted CSX's motion and Collier appeals.

On this appeal, Collier claims that the release agreement does not bar this action because (1) under § 5 of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 55, all contracts that "enable any common carrier to exempt itself from any liability" created by that act are to that extent void, and (2) the Supreme Court decision Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 123 S.Ct. 1210 (2003), dealing with claims arising from railroad workers' exposure to asbestos precludes CSX's reliance on the release as a defense. He further contends that the District Court erred in granting CSX's Rule 12(b)(6) motion because in his complaint he made allegations that supported granting him relief. Appellant's br. at 6. We conclude that our opinion in Wicker v. Conrail, 142

2

F.3d 690 (3d Cir. 1998), controls on this appeal, and that the application of <u>Ayers</u> does not preserve Collier's claim. Therefore, inasmuch as the release agreement validly bars recovery by Collier in this lawsuit, we will affirm the District Court's order of dismissal entered on March 23, 2016.

## I.    STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the Court's grant of a motion to dismiss. <u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 206 (3d Cir. 2009).

## II.    BACKGROUND

Collier alleges that the facts, which we accept on this appeal, are as follows. For 17 years, from 1961 until 1978, Collier worked as a carman-welder for CSX and its predecessors-in-interest in Kentucky. Appellant's br. at 3. Approximately 12 years after this employment, he was diagnosed with a non-malignant disease from his exposure to asbestos while he had been working for CSX. <u>Id.</u> He subsequently filed suit under the FELA alleging that he was "required to work amidst excessive amounts of naphthalene, xylene, silica sand, asbestos, petroleum thinners, epoxy and urathane [sic] paints and other types of chemical contaminants and the dust particles, mist, fumes and gases of the aforementioned contaminants" which "caused him to suffer severe and permanent injury to his person." App. at 27.

3

The parties ultimately settled the foregoing suit in 1994 for $7,500. Appellant's br. at 3. In the settlement, in relevant part, Collier released CSX

> of and from all liability for all claims for occupational disease or personal injury now known to have resulted or suspected to have resulted from [his] employment with [CSX], and also for all known and unknown, manifested and unmanifested, suspected and unanticipated diseases or injuries, including cancer, arising from or contributed to by exposure to any and all toxic substances, including but not limited to, sand, silica, diesel fumes, welding fumes, coal dust, chemicals, toxic and/or pathogenic particulate matters, liquids, solids, dusts, fumes, vapors mists or gases, and exposure to and ingestion of asbestos while employed by [CSX]. The parties agree that a portion of the monies paid for this RELEASE AGREEMENT is for risk, fear and/or possible future manifestation of either the effects of and/or injury or disease due to alleged exposure to such substances as described in this paragraph.

App. at 23.

In 2014, Collier was diagnosed with asbestos-related lung cancer and he subsequently filed another lawsuit under the FELA against CSX, the appeal from the dismissal of which is before us now. Id. at 15. In this new action, he alleges that he "has developed symptoms due to his asbestos inhalations and injuries. [He] believes and therefore avers that his lung cancer was the result of his asbestos exposure on the railroad." Id. at 17.

CSX filed a motion to dismiss pursuant to Rule 12(b)(6) and attached to its motion a copy of the original release agreement,[1] the 1994 complaint, and the consent order dismissing the 1994 case with prejudice. Id. at 19-32. The District Court granted CSX's

---

[1] The District Court regarded the release as a public record as it was filed. Collier does not challenge this treatment.

4

motion, holding that the release agreement barred Collier's claims. Id. at 3. Collier has appealed.

## III.    DISCUSSION

Because our review of the District Court's Rule 12(b)(6) dismissal is plenary, we apply the same standard as that Court. See Carpenters Health v. Mgmt. Res. Sys., Inc., 837 F.3d 378, 382 (3d Cir. 2016). In our review, we "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010). We have held that, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaintant's claims are based upon these documents." Id. at 230. The parties do not dispute the authenticity of the release agreement and have provided a joint appendix which includes the 1994 complaint and subsequent order dismissing the prior case with prejudice. Therefore, we will analyze (1) whether the release agreement bars this action in light of § 5 of the FELA and (2) whether dismissal under Rule 12(b)(6) was warranted.


1. The Enforceability of the Release Agreement

The parties focus on the application of Ayers and Wicker. Collier maintains that the Supreme Court in Ayers interpreted § 5 of the FELA liberally and concluded that it "indicated a congressional intent to bar any settlement for any injury other than that

5

which was at issue." Appellant's br. at 9. He further asserts that "Ayers expressly ruled that if it allowed a worker to recover for the risk of cancer, that [sic] a later lawsuit for the manifestation of the cancer itself would permit a double recovery." Id. According to his reading of Ayers, "[a]lthough the Supreme Court recognized that a railroad worker could settle a FELA claim, § 5 only permitted the worker to include known risks that flowed from the known injuries in the settlement." Id. at 11 (emphasis in original). Further, he contends that the Supreme Court recognized that asbestos-related cancer was separate from non-malignant asbestos-related diseases. Id. at 10. Therefore, he argues that a settlement for exposure to asbestosis could not validly cover claims for asbestos-related cancer. He also asserts that the District Court misread Wicker in holding that the release agreement was enforceable. Id. at 11-12.

CSX counters that Collier did not mention Ayers in his memorandum in the District Court opposing CSX's motion for summary judgment, Ayers is irrelevant to the current case because it did not mention § 5, and the District Court properly applied Wicker. Appellee's br. at 19-25.

Ayers does not provide guidance that assists us in resolving the issue before us. In Ayers, the Supreme Court addressed whether employees who developed asbestosis from exposure to asbestos while working for a railroad can recover "pain and suffering" damages under the FELA because of their fear of developing cancer. Ayers, 538 U.S. at 140, 123 S.Ct. at 1214. The Court held that the employees could make such recoveries. Id. at 141, 123 S.Ct. at 1215. But the Court did not discuss § 5, and, instead, discussed how its holding comported with the law in jurisdictions that followed the "'separate

6

disease rule,' under which most courts have held that the statute of limitations runs separately for each asbestos-related disease"—an issue entirely unrelated to that in the present case. Id. at 152, 123 S.Ct. at 1221. Collier relies on the Ayers Court's acknowledgement that in those jurisdictions "claimants may bring a second action if cancer develops." Id. at 152-53, 123 S.Ct. at 1221. But neither the majority opinion nor the concurring and dissenting opinion in Ayers addressed the question of whether an employee in settling a lawsuit based on asbestos exposure can waive his or her right to bring a subsequent action based on future complications from his exposure to asbestos.

Unlike Ayers, Wicker guides our evaluation of whether § 5 of the FELA prevents enforcement of the release agreement. In Wicker, we "h[e]ld that § 5 of [the] FELA allows an employer to negotiate a release of claims with an employee provided the release is limited to those risks which are known by the parties at the time the release is negotiated." Wicker, 142 F.3d at 702. In adopting this "known risks" standard, we rejected the "known injury" standard, which would "limit[] [a] release to those injuries known to the employee at the time the release is executed." Id. at 700. Under the "known risks" standard, "a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed." Id. at 701. We recognized a limit: "Claims relating to unknown risks do not constitute 'controversies,' and may not be waived under § 5 of FELA." Id. We adopted the known risk standard because "it is entirely conceivable that both employee and employer could fully

7

comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement." Id. at 700.

We concluded in Wicker that the parties' intent was paramount in considering these provisions' enforceability. Id. Thus, a written release is "not conclusive" in itself, and the inquiry into its validity is "fact-intensive." Id. at 701. An employee may "attack" a boilerplate agreement that "include[s] an extensive catalog of every chemical and hazard known to railroad employment." Id. In that decision, we also provided some guidelines for use in determining parties' intent. Thus, if a release "chronicles the scope and duration of the known risks, it would supply strong evidence in support of the release defense." Id. But if a "specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she intended to release liability for it." Id.

In Wicker, we acknowledged that the Supreme Court has held that the party attacking the enforceablility of a release agreement bears the burden of proof, a burden that the plaintiffs met in Wicker. Id. at 696. Wicker concerned a situation where several employees settled claims unrelated to chemical exposures that led to their later injuries. Id. at 699. Their releases covered a broad range of exposure to chemicals. Id. at 693-94. In the later cases, each employee contended either that he had not known that he had been exposed to the chemical at issue or that he was unaware that his release for back injuries also waived future chemical exposure claims. Id. at 692-94. Hence the employees were able to successfully attack the release provision's enforceability on the employer's motion for summary judgment.

8

Here, the undisputed documents show that the "known risks" standard has been satisfied and the release agreement is enforceable. The release including the monetary payment was given to settle the prior lawsuit. In that prior action, Collier sued in part for issues arising out of asbestos exposure. Obviously, when Collier filed suit in 1994 based on his exposure to asbestos among other contaminants, he demonstrated his knowledge that he had been exposed to asbestos. Under the "known risk" test, the issue is not, as Collier contends, whether his prior asbestos-related injury would develop into cancer—it is whether he was aware of his exposure to asbestos and the risk that the exposure could cause cancer. Therefore, contrary to Collier's contentions on this appeal, we need not consider evidence on which he relies that his prior injury is separate from the cancer for which he seeks a recovery in determining whether cancer was a known risk when Collier settled his asbestos-related suit.

Rather, we only need consider the validity of those provisions concerning asbestos, the subject of the current suit. Notwithstanding the circumstance that the scope of the release seems fairly co-extensive with the scope of the contamination claimed in the initial complaint, as the District Court pointed out CSX is only attempting to enforce the part of the release involving cancer from exposure to asbestos. The release itself specifically mentioned cancer arising from asbestos exposure. Inasmuch as Collier demonstrated his knowledge of that exposure in filing his initial 1994 complaint and only the part of the release agreement that details that known risk is at issue here, that agreement is enforceable to defeat his asbestos-related claims.

2. The Rule 12(b)(6) Dismissal

Notwithstanding the settlement agreement, Collier contends, using a pre-Twombly standard (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007)), that the District Court improperly dismissed the case. Our standard of review on this issue is not as Collier asserts whether "it appears to a certainty that no relief could be granted under any set of facts which could be proved," Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005), but rather is whether Collier would be entitled to relief based on whether the allegations in the complaint "plausibly give rise to a right to relief," taking into consideration the documents detailed above. Carpenters Health, 837 F.3d at 382 (emphasis in original). Collier maintains that the Court should have denied CSX's motion to dismiss and instead waited to consider the evidence on a motion for summary judgment.[2] Appellant's br. at 16. He further argues that the Court should have considered evidence that asbestosis does not cause cancer. Id. He also contends that the settlement agreement was inconclusive because it failed to provide the "quantity, location and duration" of the asbestos exposure, circumstances that Wicker recognized are helpful in determining a party's intent in signing a release agreement. Id.

As we have stated above, on consideration of a motion to dismiss, a court may consider unquestionably authentic exhibits in determining whether a plaintiff plausibly would be entitled to relief. Collier sued CSX based on his exposure to asbestos and

---

[2] Collier also argues that the District Court should have considered the motion pursuant to Federal Rule of Civil Procedure 12(c) dealing with a motion for judgment on the pleadings rather than pursuant to Rule 12(b)(6). Appellant's br. at 2. But in this case a consideration under Rule 12(c) was not necessary for Collier indicates that "[t]he standard and scope of review of [the two motions] are essentially the same." Id.

10

settled that claim by executing a release that specifically released any claim for cancer that might arise from his work-related exposure to asbestos. Moreover, he could not plausibly claim that he did not know that cancer was a risk of asbestos exposure, and it would be implausible to conclude that he did not know of his exposure to asbestos when he settled his prior asbestos-related case. Therefore, the District Court properly dismissed this case.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order of dismissal of March 23, 2016.